J-S79040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
CHRISTOPHER JOHNSON, :
:
Appellant : No. 549 EDA 2016

Appeal from the Judgment of Sentence January 15, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0003935-2011;
CP-51-CR-0003936-2011

BEFORE: GANTMAN, P.J., MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 05, 2016**

Christopher Johnson ("Johnson") appeals from the judgment of

sentence imposed following his open plea of *nolo contendere* to two counts

of assault of a law enforcement officer, and his open guilty plea to two

counts each of simple assault and recklessly endangering another person,

and one count each of carrying firearms on public streets of Philadelphia and

possession of an instrument of crime.[1]   ***See*** 18 Pa.C.S.A. §§ 2702.1(a),

2701, 2705, 6108, 907(a).  We affirm.

The trial court set forth the relevant facts as follows:

On October 21, 2010, Officer Michael Dunbar [("Officer
Dunbar")] and his partner, Officer Shawn McKnight [("Officer
McKnight")], responded to a radio call for burglary in the area of
3600 Germantown Avenue[,] around 12:18 a.m.[,] in a marked
police car and in full uniforms.  While driving down towards the

---

[1] Johnson was charged on two separate dockets.  The trial court accepted his
pleas and imposed a sentence on both dockets simultaneously.  Johnson
filed the instant appeal from both dockets.

end of the block, they heard a loud "pop" sound from a parked white van that was next to them. Officer Dunbar testified that he thought they were being shot at[,] and was shocked. There was glass from the white van coming towards their police car. The officers pulled over, exited the car, and took cover. They then used a flashlight to look up into a third floor window at 3627 Germantown Avenue and saw several bullet holes through the screen of the window. … [H]ighway patrol officers surrounded the area and held the scene. The officers entered that property and went up to the third floor[,] where they found [Johnson], Aaron Spencer [("Spencer")], and Koran White [("White")] pretending to be asleep. The officers took them out for identification. Both [White] and [Spencer] provided a police statement indicating that [Johnson] was the one who shot outside the window. The officers noted that there was a firearm on top of the roof of the adjacent property, which is outside of the third floor window. Although [Johnson's] DNA was excluded, the officers recovered the firearm, which was tested as operable. Paul Riley, an employee at Clock Bar, was interviewed that night and gave a police statement that he heard multiple shots. He first heard two shots. Three minutes later, he heard one more shot, and five minutes later, he heard one last shot.

On October 25, 2010, [Johnson] called his mother[,] … while in prison[,] and told her that he [thought] [Spencer] and [White] "snitched on him." He told his mother that he would not talk about whether or not he shot at the police, but he told her that his fingerprints are not on the gun because he "wiped it down." When his mother asked him if anybody else shot at the police, [Johnson] responded [] "no, mom, I'm the only one who shot it." He admitted to missing while shooting outside the window[,] and that the officers recovered the gun from the roof after he threw the firearm outside the window. On another occasion, [Johnson] again admitted that he was the person who shot at the police and that he wiped the gun thoroughly. On October 26, 2010, during another prison call, [Johnson] said that he was not shooting at the cop car and that the cop car was nowhere near there. Rather, he was shooting out the window for fun. [Johnson] testified that he simply "fired at this minivan and that's it" because he "was intoxicated off of Xannies." However, there are trajectory rods that show the path of the bullet that go directly down to the parked cars that were parked on the street. [Additionally,] [Johnson] does not have a license to carry a firearm.

Trial Court Opinion, 4/11/16, at 2-4 (internal citations omitted).

On September 15, 2015, Johnson entered the above-mentioned pleas. The trial court deferred sentencing, and ordered a pre-sentence investigation report ("PSI") and a mental health evaluation. On January 15, 2016, after reviewing the PSI, the trial court sentenced Johnson to an aggregate term of 12-24 years in prison,[2] followed by 5 years of probation, with credit for time served.

On January 25, 2016, Johnson filed a post-sentence Motion challenging the discretionary aspects of his sentence, which the trial court denied. Johnson subsequently filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Johnson raises the following questions for our review:

I. Whether there was sufficient evidence to support [Johnson's] conviction for two counts of [a]ssault of [a] [l]aw [e]nforcement [o]fficer?

II. Whether the sentence imposed by the trial court was manifestly excessive and unreasonable, where the [trial] court

---

[2] Relevant to this appeal, the trial court imposed a prison term of 6 to 12 years for each count of assault of law enforcement officer, to run consecutive to each other. Notably, under the Sentencing Code, assault of a law enforcement officer carries a mandatory minimum sentence of 20 years in prison. *See* 42 Pa.C.S.A. § 9719.1; *see also* 18 Pa.C.S.A. § 2702.1(b) (providing that "a person convicted under subsection (a) shall be sentenced to a term of imprisonment fixed by the court at not more than 40 years."). However, after Johnson entered his plea of *nolo contendere*, the Commonwealth agreed not to pursue the mandatory minimum sentence. *See* N.T., 9/15/15, at 6, 13.

imposed consecutive sentences above the applicable guideline range, which does not reflect [Johnson's] rehabilitative needs and is greater than that necessary to guarantee the protection of the public?

Brief for Appellant at 5 (issues renumbered).

In his first claim, Johnson argues that there was insufficient evidence to support his conviction for assault of a law enforcement officer. *Id.* at 17. Johnson asserts that he lacked the *mens rea* necessary to support his conviction because he was "foolishly firing random shots down onto the street," and he was not aware that the police officers were on the street at that time. *Id.* at 19-20. Johnson acknowledges that he shot at the minivan, but argues that he "wasn't trying to shoot anybody." *Id.* at 20. Additionally, Johnson contends that he started firing shots before the officers arrived, which supports his claim that he did not specifically intend to shoot the officers. *Id.*

For purposes of review, a plea of *nolo contendere* is treated the same as a guilty plea. *Commonwealth v. Lewis*, 791 A.2d 1227, 1230 (Pa. Super. 2002). "By entering a plea of *nolo contendere*, a defendant waives all defects and defenses except those concerning the jurisdiction of the court, legality of sentence, and validity of plea." *Commonwealth v. Nelson*, 666 A.2d 714, 717 (Pa. Super. 1995) (citation omitted).

Accordingly, because Johnson pled *nolo contendere*, he is precluded from presenting any defects or defenses aside from the limited grounds set

forth above. *See id.* Therefore, Johnson's challenge to the sufficiency of the evidence is waived.[3]

In his second claim, Johnson asserts that the trial court abused its discretion by imposing consecutive sentences for the assault of a law enforcement officer charges, above the aggravated guidelines range.[4] Brief for Appellant at 12. Johnson claims that his sentence is manifestly excessive, and that the trial court did not adequately consider his rehabilitative needs. *Id.* at 12, 15. Johnson argues that he "took substantial strides toward his rehabilitation" while in prison by completing anger management and the "Choosing to Think and Thinking to Choose" program, and by completing training in Microsoft Word and Excel. *Id.* at 16.

Johnson's second claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super.

---

[3] Moreover, in Johnson's Written Plea Colloquy, he acknowledged that he can appeal only if (1) he "did not know what [he] was doing when [he] pled [*nolo contendere*], or somebody forced [him] to do it—it was not voluntary;" (2) he "was in the wrong court—the court did not have jurisdiction over [his] case;" or (3) "the sentence the judge gave [him,] was for some reason illegal or improper." Written Plea Colloquy, 9/15/15, at 3. At the plea hearing, Johnson also indicated that he reviewed the Written Plea Colloquy with his counsel and understood its contents, including accepting the factual basis for the plea. *See* N.T., 9/15/15, at 13-14.

[4] Johnson's prior record score was one. For assault of a law enforcement officer, the offense gravity score was 13. The standard range of the sentencing guidelines recommends a minimum sentence of 5½ to 7 years. *See* 204 Pa. Code § 303.16(a).

2010).[5] "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa. Super. 2010).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, Johnson filed a timely Notice of Appeal and preserved his issue in a post-sentence Motion. Johnson also included a Rule 2119(f) Statement in his brief. Accordingly, we will review Johnson's Rule 2119(f) Statement to determine whether he has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the

---

[5] Johnson's plea of *nolo contendere* does not preclude a challenge to the discretionary aspects of his sentence because there was no agreement as to the sentence he would receive. ***See Commonwealth v. Brown***, 982 A.2d 1017, 1019 (Pa. Super. 2009) (stating that an open guilty plea does not preclude a challenge to the discretionary aspects of sentencing); ***see also Lewis, supra***.

sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted).

Here, Johnson's appellate brief contains the requisite Rule 2119(f) Statement. In that Statement, Johnson presents the following claim upon which he relies for allowance of appeal:

> [T]he trial court imposed a manifestly excessive sentence, by imposing [Johnson's] sentence for the counts of assault of a law enforcement officer consecutive[ly], which is unduly harsh, without taking into account [Johnson's] rehabilitative needs and other mitigating factors, including [Johnson's] expression of remorse and acceptance of responsibility at the time of sentencing, which violates the fundamental norms of sentencing, thereby raising a substantial question for appellate review of [Johnson's] excessive sentence.

Brief for Appellant at 11 (capitalization omitted).

"This Court has [] held that an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citing *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014)). Additionally,

> [i]n determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013).

Here, Johnson asserts that his aggregate sentence is unduly harsh and disproportionate to his conduct, and that the trial court failed to consider mitigating factors, including his rehabilitative needs. Brief for Appellant at 15. Accordingly, we will consider the merits of Johnson's claim. ***See Caldwell***, 117 A.3d at 770; ***see also Commonwealth v. Bonner***, 135 A.3d 592, 604 (Pa. Super. 2016) (concluding that a claim that appellant's standard range, consecutive sentences were excessive and the trial court failed to consider appellant's rehabilitative needs raised a substantial question); ***Dodge***, 77 A.3d at 1273 (finding that "[a]ppellant's claim that the [trial] court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review.").

Our standard of review of a challenge to the discretionary aspects of a sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Robinson***, 931 A.2d 15, 26 (Pa. Super. 2007).

The Sentencing Code provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The trial court must also consider the sentencing guidelines. *See id.*; *see also Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that "[w]hen imposing a sentence, the [trial] court is required to consider the sentence ranges set forth in the Sentencing Guidelines…."). Here, the sentence imposed for each charge falls within the standard range of the sentencing guidelines. *See* 204 Pa. Code § 303.16(a). Therefore, we may only vacate Johnson's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); *see also Raven*, 97 A.3d at 1254.

Initially, we observe that the sentencing court had the benefit of a PSI. Trial Court Opinion, 4/11/16, at 6. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *see also id.* (stating that "[h]aving

been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.").

Further, our review of the record reveals that the trial court considered relevant mitigating factors prior to sentencing Johnson. At the sentencing hearing, Johnson stated that he did not intend to harm the officers, and that he regretted his "reckless" and "immature" actions. **See** N.T., 1/15/16, at 30-32. Thereafter, the trial court detailed its sentencing considerations, stating the following:

> I do understand that you did enter into pleas and you have accepted responsibility. I listened to what you said today, I listened to what your parents said, but I also listened to the officer who was there. I find this extremely, extremely disturbing. And again, like I said earlier, it's just by grace that it's not a homicide. And I am glad that you are remorseful now. I'm not exactly sure of everything you're remorseful for, you know, because you did talk about some other things.

N.T., 1/15/16, at 32-33. The trial court also reviewed Johnson's record, which includes several juvenile adjudications, as well as nine arrests, six convictions and four supervision violations as an adult. **See** Trial Court Opinion, 4/11/16, at 7. The trial court concluded that, "[d]ue to the reprehensible and violent nature of the charges, the offense gravity score of the charges, and [Johnson's] previous violations of supervision," the sentence is necessary "to protect the public and the officers who are carrying out their duties." **Id.** Moreover, the trial court considered the mental health report and police report. **See id.** at 6. Based upon this evidence, the trial court imposed consecutive standard range sentences for

each of Johnson's assault of a law enforcement officer charges.[6]  Discerning no abuse of discretion by the trial court, we will not disrupt Johnson's sentence on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2016

---

[6] The consecutive nature of Johnson's sentences, without more, does not necessitate the conclusion that Johnson's sentence is manifestly excessive. **See Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011) (stating that "[g]enerally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.") (citation omitted); **see also Mastromarino**, 2 A.3d at 589 (stating that appellant was not entitled to a "volume discount" for multiple crimes).